# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY, a Missouri insurance company,<br><br>Plaintiff,<br><br>v.<br><br>ABSI BUILDERS, INC., a Washington corporation; HIGHMARK HOMES, LLC, a Washington corporation; SAGER FAMILY HOMES, INC. a/k/a LINDIE LANE LLC, a Washington corporation; TOM TOLLEN, a Washington Resident; WILLIAM SAGER, a Washington Resident,<br><br>Defendants. | Case No.<br><br>**ARCH SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff, Arch Specialty Insurance Company ("Arch"), alleges as follows:

## NATURE OF THE CLAIM

1.   Arch seeks a ruling confirming that no insurance coverage exists under the Arch policy for claims made against its named insured, ABSI Builders Inc. ("ABSI"), and two companies (and related individuals) that allege they are additional insureds, Highmark Homes, LLC ("Highmark Homes") and Sager Family Homes, Inc. ("Sager Homes"), in connection with three different housing developments. There is no coverage because the Arch policy clearly

COMPLAINT - 1

excludes coverage for property damage arising out of construction or development of a housing development which has more than 12 homes. Each of the three housing developments referred to in this lawsuit involved the construction and development of more than 12 homes. Arch also seeks a declaration that it owes no duty to defend ABSI because there is no coverage and ABSI failed to provide notice of or tender any of these claims to Arch. Further, Arch seeks a declaration that it owes no duty to defend Highmark Homes, Sager Homes, and related individuals because there is no coverage afforded by the Arch policy and these companies and individuals do not qualify as additional insureds under the Arch policy for one or more of the lawsuits involving the housing developments.

## PARTIES

2.  Arch is an insurance business incorporated under the laws of the State of Missouri and has its principal place of business in Jersey City, New Jersey.

3.  Upon information and belief, ABSI was a corporation organized under the laws of Washington, with its principal place of business in Washington. ABSI is an administratively dissolved corporation. Prior to dissolution, ABSI was a construction company in the business of residential remodeling and framing.

4.  Upon information and belief, Highmark Homes was, and is, a corporation organized under the laws of Washington, with its principal place of business in Washington. Highmark Homes is an administratively dissolved corporation. Highmark is or was a general construction contractor.

5.  Upon information and belief, Sager Homes was, and is, a corporation organized under the laws of Washington, with its principal place of business in Washington. Sager Homes is a general construction contractor involved in new home construction.

6.  Upon information and belief, Tom Tollen ("Tollen") is an officer, owner and/or director of Highmark Homes, and is an individual who resides in Washington.

7. William Sager is an officer, owner and/or director of Sager Homes, and is an individual who resides in Washington.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(b), because it is the judicial district in which the defendants reside, the underlying lawsuits were filed, and a substantial part of the events giving rise to this dispute occurred.

10. Pursuant to 28 U.S.C. § 2201(a) and Federal Rules of Procedure 57, this Court has the authority to adjudicate the matters at issue and enter its judgment declaring the rights of all parties to this action.

## ARCH POLICY

11. ABSI applied for a Commercial Liability Policy from Arch. As part of that process, ABSI completed a Contractor Supplemental Application in which ABSI represented it was a general contractor, ten percent of its work was in new tract homes in one- to ten-lot subdivisions, and ten was the maximum number of homes/units in a single housing development on which the insured had worked.

12. Based on ABSI's representations in its insurance application, Arch issued Commercial General Liability Policy no. AGL005886-00 to ABSI for the policy period October 31, 2013 to October 31, 2014 (the "Policy"). The Policy was cancelled effective September 20, 2014.

//

//

COMPLAINT - 3

13. The Policy provides in the Conditions section that:

> **6. Representations**
> By accepting this policy, you agree:
> a. The statements in the Declarations are accurate and complete;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance upon your representations.

14. The Policy contains a Blanket Additional Insured Endorsement, written on form 00 AGL0100 00 02 13 which provides, in relevant part:

> **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:
>
> a. In the performance of your ongoing operations or "your work", including "your work" that has been completed; or
>
> b. In connection with your premises owned by or rented to you."
>
> All other terms and conditions of this Policy remain changed.
>
> Endorsement Number:
>
> This endorsement is effective on the inception date of this policy unless otherwise stated herein.
>
> (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)
>
> Policy Number:
>
> Named Insured:
>
> Endorsement Effective Date:

15. The Policy's Common Policy Declarations provides, in part:

> **IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE**

COMPLAINT - 4

SCHEER.LAW PLLC
600 UNIVERSITY STREET, SUITE 2100
SEATTLE, WA 98101
206-800-4070

**WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

16. The Policy's Insuring Agreement provides, in relevant part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.     Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

***

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

17. "Property damage" is defined in the Policy as: a. "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it" or b. "Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

18. The Policy contains a Residential and Residential Conversion Limitation Endorsement, written on form 00 AGL0114 00 02 13 ("Residential Endorsement"), which provides that the Policy does not cover new development or construction of non-commercial dwellings or residences in housing developments that have more than 12 units. The Residential Endorsement modifies the Policy and provides in relevant part:

This insurance does not apply to any claim, "suit", demand or loss that alleges:
A. "Bodily injury", "property damage", or "personal and advertising injury" that in any way arises out of, relates to or results from the new development or construction, in whole or in part, of any:
(1) "Non-commercial dwelling or residence"; or

COMPLAINT - 5

      (2) Building converted at any time, in whole, or in part, to a "non-commercial dwelling or residence"
- B. "Property damage" included within the "products-completed operations hazard to any:
  - (1) "Non-commercial dwelling or residence"; or
  - (2) Building which is converted, in whole or in part, to a "non-commercial dwelling or residence" at any time.

This Endorsement shall not apply where such development or construction, referenced in Paragraph **I.A.** above, does not exceed 12 units in any one dwelling or housing development or when work is performed on a property that has obtained a certificate of occupancy prior to such work being performed.

19.    The Policy also contains a Condition titled "Duties In The Event of Occurrence, Offense, Claim or Suit" which provides, in relevant part:

   **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
   a. You [the insured] must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim…

* * *

   b. If a claim is made or a "suit" is brought against any insured, you must:
     (1) Immediately record the specifics of the claim or "suit" and the date received; and
     (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit as soon as practicable.

   c. You and any other involved insured must:
     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
     (2) Authorize us to obtain records and other information;
     (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
     (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

* * *

## FACTUAL BACKGROUND

### Becker Lawsuit – East Park Development

20. On November 28, 2016, 46 plaintiffs, owners of 26 identified homes in the East Park Development, filed a lawsuit against Highmark Homes and Tollen titled *Matthew Becker, et al. v. Highmark Homes, LLC, et al.*, Pierce County Superior Court, Case No. 16-2-02165-6 ("Becker Lawsuit").

21. A Second Amended Complaint in the Becker Lawsuit was filed on March 2, 2018, which included 45 plaintiffs identified as the owners of 31 homes in the East Park Development. The Second Amended Complaint asserts causes of action for: (1) Breach of Contract; (2) Breach of Implied Warranty of Habitability; (3) Violation of Consumer Protection Act (RCW 19.86); (4) Breach of the Independent Duty Doctrine; and (5) Negligent Misrepresentation.

22. Plaintiffs in the Becker Lawsuit allege defendants violated codes and deviated from plans and specifications in constructing homes in the East Park Development, which resulted in property damage.

23. On March 20, 2018, Highmark Homes and Tollen filed a Third-Party Complaint against ABSI and others, alleging Highmark Homes contracted with ABSI to perform labor or supply materials for the construction of plaintiffs' homes and asserting that ABSI's work is implicated by the plaintiffs' claims in the Becker Lawsuit.

24. Upon information and belief, the Becker Third-Party Complaint was not served on ABSI.

25. Upon information and belief, Highmark Homes settled with the Becker plaintiffs and assigned its rights against Highmark Homes' subcontractors to the plaintiffs.

### LeClair Lawsuit – Bay Vista Development

26. On November 28, 2016, homeowners in the Bay Vista Development filed a lawsuit against Highmark Homes and Tollen titled *Richard LeClair, et al. v. Highmark Homes, LLC, et al.*, Kitsap County Superior Court, Case No. 16-2-02164-8 ("LeClair Lawsuit").

27.     A Fourth Amended Complaint was filed in the LeClair Lawsuit on March 1, 2018 asserting causes of action for: (1) Breach of Contract; (2) Breach of Implied Warranty of Habitability; (3) Violation of Consumer Protection Act (RCW 19.86); (4) Breach of the Independent Duty Doctrine; and (5) Negligent Misrepresentation.

28.     Plaintiffs in the LeClair Lawsuit allege defendants violated codes and deviated from plans and specifications in constructing homes in the Bay Vista Development which resulted in property damage.

29.     On March 23, 2018, Highmark Homes and Tollen filed a Third-Party Complaint against ABSI and others, alleging that Highmark Homes contracted with ABSI to perform labor or supply materials for the construction of plaintiffs' homes and asserting that ABSI's work is implicated by the plaintiffs' claims.

30.     On or about August 3, 2018, Highmark Homes served the Third-Party Complaint on ABSI.

**Mills Lawsuit – Golden Willows Development**

31.     On July 11, 2018, several homeowners of the Golden Willows Development filed a lawsuit against Sager Homes and Sager, titled *Edward Mills, et al. v. Sager Family Homes, Inc. a/k/a Lindie Lane, LLC, et al.*, Pierce County Superior Court, Case No. 18-2-09684-2 ("Mills Lawsuit").

32.     A Second Amended Complaint was filed in the Mills Lawsuit on September 21, 2018 asserting causes of action for: (1) Breach of Contract; (2) Breach of Implied Warranty of Habitability; (3) Violation of Consumer Protection Act (RCW 19.86); (4) Breach of the Independent Duty Doctrine; and (5) Negligent Misrepresentation.

33.     Plaintiffs in the Mills Lawsuit allege defendants violated codes and deviated from plans and specifications in constructing homes in the Golden Willows Development which resulted in property damage.

34. On November 7, 2018, Sager Homes filed a Third-Party Complaint against ABSI and others, alleging Sager Homes contracted with ABSI to perform labor or supply materials for construction of three of the homes that are the subject of the Mills Lawsuit and asserting that ABSI's work is implicated by plaintiffs' claims.

35. Attached to the Third-Party Complaint filed by Sager Homes is an expert report prepared by Dibble Engineers, Inc. (attached to the Third-Party Complaint as Exhibit 3). The expert report indicates there are 13 homes in the Golden Willows Development.

36. Sager Homes served the Third-Party Complaint on ABSI.

### ABSI's Lack of Notice or Tender

37. ABSI is an administratively dissolved Washington corporation.

38. ABSI cannot be located. Arch has been unsuccessful at communicating with ABSI, including through mail correspondence to ABSI's last known address of 3609 138th Street E, in Tacoma, Washington.

39. ABSI did not provide notice of or tender to Arch the Becker Lawsuit, the LeClair Lawsuit, or the Mills Lawsuit.

40. Arch has written to ABSI declining coverage for the three lawsuits based on, among other things, that these three claims involved developments with more than 12 homes and the Arch Policy excludes coverage for such claims. Further, Arch denied any duty to defend because of the lack of coverage and the lack of the insured's notice and cooperation.

### Highmark Homes' and Tollen's Claims

41. On or about November 30, 2012, ABSI and Highmark Homes entered into a Master Subcontractor Agreement ("Highmark Agreement") in which Highmark Homes retained the services of ABSI.

42. The Highmark Homes Agreement requires ABSI, prior to the commencement of work or entry to any particular jobsite, to obtain liability coverage naming Highmark Homes as an additional insured.

43. The Highmark Agreement does not reference the East Park Development or the Bay Vista Development.

44. Highmark Homes and Tollen tendered the Becker Lawsuit to Arch as purported additional insureds of ABSI on or about January 25, 2018.

45. Highmark Homes and Tollen tendered the LeClair Lawsuit to Arch as purported additional insureds of ABSI on or about January 22, 2018.

46. Highmark Homes and Tollen claim to be additional insureds under the Arch Policy.

47. Arch investigated the Becker Lawsuit claim, including requesting information from Highmark Homes and Tollen demonstrating they were additional insureds under the Policy. Highmark Homes and Tollen did not provide the requested information. Arch informed Highmark Homes and Tollen that the Residential Endorsement in the Arch Policy precluded coverage for the Becker Lawsuit because the East Park Development was new residential construction in a development involving more than 12 units.

48. Arch investigated the LeClair Lawsuit claim, including requesting information demonstrating that Highmark Homes and Tollen were additional insureds in connection with the Bay Vista Development. Highmark Homes and Tollen did not provide the requested information.

49. As part of Arch's investigation, Arch determined that ABSI may have performed framing work on two homes in the East Park Development and the East Park Development has 454 single and multi-family homes.

50. As part of Arch's investigation, Arch determined that ABSI may have performed framing work on two homes in the Bay Vista Development and the Bay Vista Development has 875 single and multi-family homes.

51. On or about April 11, 2019, Arch declined Highmark Homes' and Tollen's tender for defense and indemnity of the Becker Lawsuit.

COMPLAINT - 10

SCHEER.LAW PLLC
600 UNIVERSITY STREET, SUITE 2100
SEATTLE, WA 98101
206-800-4070

52. On or about May 14, 2019, Arch declined Highmark Homes' and Tollen's tender for defense and indemnity of the LeClair Lawsuit.

### Sager Home's Claims

53. On or about March 21, 2013, ABSI and Sager Homes entered into a Master Service Agreement ("Sager Agreement") in which Sager retained the services of ABSI. The Sager Agreement requires ABSI, prior to the commencement of any work, to obtain general liability insurance naming Sager as an additional insured.

54. The Sager Agreement does not obligate Sager Homes or ABSI "to agree to any subsequent request for services or to any volume of business during the term of the policy." However, if Sager Homes or ABSI agrees to procure or provide service, then the terms of the Sager Agreement would apply.

55. The Sager Agreement does not reference or mention the Golden Willows Development. However, Sager Homes provided copies of invoices reflecting ABSI's work on two lots in the Golden Willows Development.

56. Sager Homes tendered the Mills Lawsuit to Arch as a purported additional insured of ABSI.

57. William Sager did not tender the Mills Lawsuit to Arch.

58. As part of Arch's investigation, Arch determined that the Golden Willows Development has 14 homes.

59. Arch agreed to defend Sager Homes under a Reservation of Rights, including the right to withdraw from the defense of Sager Homes.

### FIRST CAUSE OF ACTION

**(Declaratory Relief – No Duty to Indemnify – Becker Lawsuit)**

60. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as though fully set forth here.

61. The Policy provides that it will pay those sums the insured becomes legally obligated to pay for damages because of "property damage", subject to the terms, exclusions, and conditions in the Policy.

62. The Policy contains a Residential Endorsement which plainly states that it does not apply to claims for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

63. The Becker Lawsuit included 45 plaintiffs identified as the owners of 31 homes in the East Park Development

64. Upon information and belief, the East Park Development contains 454 single and multi-family homes.

65. Arch contends that it has no duty to indemnify any of the defendants for any judgment or settlement in the Becker Lawsuit.

66. Arch is informed and believes that defendants contend otherwise.

67. An actual controversy exists between Arch on the one hand, and defendants on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

68. Arch seeks a judicial determination and declaration that Arch has no duty, under the Policy, to indemnify any of the defendants in connection with the Becker Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

## SECOND CAUSE OF ACTION

**(Declaratory Relief – No Duty to Indemnify – LeClair Lawsuit)**

69. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as though fully set forth here.

70. The Policy provides that it will pay those sums the insured becomes legally obligated to pay for damages because of "property damage", subject to the terms, exclusions, and conditions in the Policy.

71. The Policy contains a Residential Endorsement which plainly states that it does not apply to claims for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

72. Upon information and belief, the Bay Vista Development contains 875 single and multi-family homes.

73. Arch contends that it has no duty to indemnify any of the defendants for any judgment or settlement in the LeClair Lawsuit,

74. Arch is informed and believes that defendants contend otherwise.

75. An actual controversy exists between Arch on the one hand, and defendants on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

76. Arch seeks a judicial determination and declaration that Arch has no duty, under the Policy, to indemnify any of the defendants in connection with the LeClair Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify – Mills Lawsuit)

77. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as though fully set forth here.

78. The Policy provides that it will pay those sums the insured becomes legally obligated to pay for damages because of "property damage", subject to the terms, exclusions, and conditions in the Policy.

79. The Policy contains a Residential Endorsement which plainly states that it does not apply to claims for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

80. Upon information and belief, the Golden Willows Development contains 14 homes.

81. Arch contends that it has no duty to indemnify any of the defendants for any judgment or settlement in the Mills Lawsuit.

82. Arch is informed and believes that defendants contend otherwise.

83. An actual controversy exists between Arch on the one hand, and defendants on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

84. Arch seeks a judicial determination and declaration that Arch has no duty, under the Policy, to indemnify any of the defendants in connection with the Mills Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

# FOURTH CAUSE OF ACTION

### (Declaratory Relief – No Duty to Defend ABSI)

85. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 82 of this Complaint as though fully set forth here.

86. The Policy excludes coverage for the insured's liability for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes. The Becker Lawsuit, LeClair Lawsuit and Mills Lawsuit ("Construction Lawsuits") all are developments with more than 12 homes.

87. The Policy has a "Cooperation Clause" which requires ABSI to provide notice of a claim or "suit" to Arch "as soon as practicable" and to cooperate with its insurer in the investigation and defense of the suit.

88. ABSI did not provide notice of the Construction Lawsuits to Arch and has not cooperated in Arch's investigation of the suit.

89. Arch contends that it has no duty to defend ABSI against the Construction Lawsuits under the Policy.

90. Arch is informed and believes that ABSI may contend otherwise.

91. An actual controversy exists between Arch on the one hand, and ABSI on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

92. Arch seeks a judicial determination and declaration that Arch has no duty to defend ABSI in the Construction Lawsuits. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief – No Duty to Defend Highmark Homes and Tollen in the Becker Lawsuit)

93. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 66 of this Complaint as though fully set forth here.

94. The Policy excludes coverage for the insured's liability for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

95. Arch contends that there is no duty to defend Highmark Homes and Tollen in the Becker Lawsuit.

96. Arch is informed and believes that the Highmark Homes and Tollen contend otherwise.

97. An actual controversy exists between Arch on the one hand, and Highmark Homes and Tollen on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

98. Arch seeks a judicial determination and declaration that Arch has no duty to defend Highmark Homes and Tollen with respect to the Becker Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

/ / /

/ / /

# SIXTH CAUSE OF ACTION

**(Declaratory Relief – No Duty to Defend Highmark Homes and Tollen in the LeClair Lawsuit)**

99. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57, and 67-74 of this Complaint as though fully set forth here.

100. The Policy excludes coverage for the insured's liability for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

101. Arch contends there is no duty to defend Highmark Homes and Tollen in the LeClair Lawsuit.

102. Arch is informed and believes that the Highmark Homes and Tollen contend otherwise.

103. An actual controversy exists between Arch on the one hand, and Highmark Homes and Tollen on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

104. Arch seeks a judicial determination and declaration that Arch has no duty to defend Highmark Homes and Tollen with respect to the LeClair Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

/ / /

/ / /

# SEVENTH CAUSE OF ACTION

### (Declaratory Relief – No Duty to Defend Sager Homes in the Mills Lawsuit)

105. Arch re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 57, and 75-82 of this Complaint as though fully set forth here.

106. The Policy excludes coverage for the insured's liability for "property damage" arising out of, relating to or resulting from the new development or construction in whole or part of any "non-commercial dwelling or residence," or for damage from completed operations to such a dwelling or residence. The phrase "non-commercial dwelling or residence" is defined to include homes. The exclusion to the Residential Endorsement does not apply to developments of more than 12 homes.

107. Arch contends that there is no duty to defend Sager Homes and Sager in the Mills Lawsuit.

108. Arch is informed and believes that Sager Homes contends otherwise. (Sager has not tendered the lawsuit to Arch.)

109. An actual controversy exists between Arch on the one hand, and Sager Homes and (possibly) Sager on the other hand, with regard to their respective duties and obligations, if any, under the Policy and applicable law.

110. Arch seeks a judicial determination and declaration that Arch has no duty to defend Sager Homes and Sager with respect to the Mills Lawsuit. Such judicial determination and declaration is necessary and proper in order that all the parties are bound by the same interpretation of the Policy.

Wherefore, Arch prays for the relief set forth below.

# PRAYER FOR RELIEF

WHEREFORE, Arch prays for entry of judgment and relief as follows:

1. A declaration and order that Arch has no duty to indemnify Highmark Homes, Tollen, and ABSI for any judgment in or settlement of the Becker Lawsuit.

COMPLAINT - 18

SCHEER.LAW PLLC
600 UNIVERSITY STREET, SUITE 2100
SEATTLE, WA 98101
206-800-4070

2.	A declaration and order that Arch has no duty to indemnify Highmark Homes, Tollen, and ABSI for any judgment in or settlement of the LeClair Lawsuit.

3.	A declaration and order that Arch has no duty to indemnify Sager Homes, Sager, and ABSI for any judgment in or settlement of the Mills Lawsuit.

4.	A declaration and order that Arch has no duty to defend ABSI against any of the Construction Lawsuits.

5.	A declaration and order that Arch has no duty to defend Highmark Homes and Tollen against the Becker Lawsuit.

6.	A declaration and order that Arch has no duty to defend Highmark Homes and Tollen against the LeClair Lawsuit.

7.	A declaration and order that Arch has no duty to defend Sager Homes and Sager against the Mills Lawsuit;

8.	For costs of suit; and

9.	For such other relief as this court deems just and proper.

Dated: November 27th, 2019

SCHEER.LAW PLLC

By */s/ Jennifer L. Crow*
Jennifer Crow, WSBA No. 43746
jen@scheer.law
600 University Street, Suite 2100
Seattle, WA 98101
206-800-4070
Attorney for Arch Specialty Insurance Company

COMPLAINT - 19

SCHEER.LAW PLLC
600 UNIVERSITY STREET, SUITE 2100
SEATTLE, WA 98101
206-800-4070